# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Christine Puncochar, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cv-07089 |
| | ) |
| Revenue Management of Illinois Corp., Ronald R. McLaughlin, RMK Holdings, Inc., and Sue Patterson, | ) Judge Sharon Johnson Coleman |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Christine Puncochar ("Puncochar") filed a four count second amended complaint (Dkt. 27) against Revenue Management of Illinois Corporation ("RMIC"), Ronald R. McLaughlin ("McLaughlin"), RMK Holdings, Inc. ("RMK Holdings"), and Sue Patterson ("Patterson") alleging multiple violations of the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692 *et seq.* RMIC and McLaughlin (collectively, "RMIC Defendants") and Puncochar filed cross-motions for summary judgment. The RMIC Defendants also filed a Rule 11 motion for sanctions. For the following reasons, Puncochar's motion for summary judgment [64] is denied, the RMIC Defendants' motion for summary judgment [49] is granted, and the RMIC Defendants' motion for sanctions [51] is denied.

**Background**

The following facts are undisputed unless otherwise indicated.

On November 12, 2014, Puncochar incurred a debt of $108.10 to Kurtz Ambulance Service, Inc. ("Kurtz"). (Dkt. 67-1 ¶ 2; Dkt. 70 ¶ 6).[1, 2] This debt (the "Kurtz debt") is the subject of this

---

[1] Dkt. 67-1 is Puncochar's response to RMIC and McLaughlin's LR 56.1 statement of facts.

suit. (Dkt. 67-1 ¶ 2). Kurtz passed the Kurtz debt on to RMK Holdings for collection. (Dkt. 67-1 ¶ 3; Dkt. 70 ¶ 11). On April 23, 2015, RMK Holdings forwarded the Kurtz debt to RMIC for collection. (Dkt. 67-1 ¶ 4; Dkt. 70 ¶ 12). On or about April 24, 2015, McLaughlin, the RMIC owner and operator, (Dkt. 67-1 ¶ 6), sent a dunning letter on RMIC letterhead to Puncochar for the Kurtz debt. (Dkt. 67-1 ¶ 5; Dkt. 70 ¶ 13). The letter contained the following:

> The [Kurtz debt] has been referred to our office for collection. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid . . . If you do not contact our office in the time specified, we will proceed with the collection of this account, which may include referring this account for legal action or reporting this delinquency to the credit bureau . . . This is an attempt to collect a debt and any information obtained will be used for that purpose. (Dkt 65-1 at PDF p. 9)

On January 27, 2015, Puncochar filed for Chapter 13 bankruptcy. (Dkt. 67-1 ¶ 1; Dkt. 70 ¶ 7). Puncochar did not list the Kurtz debt, Kurtz, RMK Holdings, or RMIC in her bankruptcy petition schedules. (Dkt. 67-1 ¶ 2). She also did not include Kurtz or any of the defendants on the bankruptcy service list. (Dkt. 53-4). On May 19, 2015, Puncochar's counsel, Richard Meier, sent the RMIC Defendants a letter in response to the dunning letter informing them of possible FDCPA violations. (Dkt. 67-1 ¶ 6; 53-3 at PDF p. 10). The letter attached a draft complaint informing the RMIC Defendants that Puncochar was involved in a bankruptcy proceeding. (53-3 at PDF pp. 11-13). The RMIC Defendants immediately ceased all collection activities. (Dkt. 67-1 ¶ 6). Kurtz and the defendants never received notice of the bankruptcy proceedings prior to the May 19 letter. (Dkt. 67-1 ¶ 7; Dkt. 53-4).

RMK Holding's relationship with RMIC was governed by the "Third Party Delinquent Accounts Receivable Agreement." ("RMK/RMIC Agreement") (Dkt. 67-1 ¶ 8). The RMK/RMIC Agreement provides that "RMK agrees all accounts placed with [RMIC] are valid and legally enforceable debts and are not disputed or subject to defense . . . or bankruptcy proceedings, unless

---

[2] Dkt. 70 is the RMIC Defendants' response to Puncochar's LR56.1 statement of facts.

otherwise disclosed in writing by RMK or its clients." (Dkt. 67-1 ¶ 8; Dkt. 53-5). Any bankruptcy notice affecting an account covered by the RMK/RMIC Agreement would be communicated to RMIC so that any collection proceedings would be terminated. (Dkt. 67-1 ¶ 9).

As part of their collection efforts on behalf of RMK Holdings, the RMIC Defendants implemented several procedures to ensure compliance with the FDCPA. First, the RMIC Defendants rely on the RMIC/RMK Agreement which is meant to ensure that RMK will not pass along any debt known to be the subject of a bankruptcy proceeding. (Dkt. 67-1 ¶ 25). Next, the RMIC Defendants provide debtors with a 30-day period to dispute a debt. (*Id.*) Before filing any action following that waiting period, RMIC searches TLO and Pacer. (*Id.*) Finally, the RMIC Defendants subscribe to BAE Systems Bankruptcy Notifications through which they are notified when RMIC, a client, or an underlying creditor on an account are listed in a bankruptcy. (*Id.*)

**Legal Standard**

Summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is appropriate where the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 322-23. Thus, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 795 (7th Cir. 2001).

This Court may impose sanctions on any attorney, law firm, or party that violates Rule 11(b). Fed. R. Civ. P. 11(c)(1). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004).

**Discussion**

*1. Cross-motions for summary judgment[3]*

Counts I-III of Puncochar's second amended complaint are premised on the RMIC Defendants' attempt "to collect a debt that . . . was *included* in [Puncochar's] bankruptcy . . . ." (Dkt. 27 ¶¶ 31, 33, 35) (emphasis added). The RMIC Defendants first argue that this Court should grant summary judgment as to Counts I-III in their favor because the Kurtz debt was not "included" in Puncochar's bankruptcy because it was not listed in the bankruptcy schedules. The RMIC Defendants rely on 11 U.S.C. § 523(a) for support.

Section 523(a)(3) provides that an unscheduled debt may not be discharged in bankruptcy proceedings. It does not, however, discuss how an unscheduled debt might otherwise be affected by a bankruptcy proceeding. Section 362(a)(6), on the other hand, prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(6). This stay is automatic against all creditors, whether or not the creditors are aware of the bankruptcy proceedings. *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). The Kurtz debt was protected by the automatic stay since Puncochar incurred it prior to filing for bankruptcy. Accordingly, this Court finds that the bankruptcy stay applied to the Kurtz debt and that, contrary to the RMIC Defendants' argument, the Kurtz debt was "included" in the bankruptcy proceedings for the purpose of this suit.

Puncochar alleges that the RMIC Defendants violated 15 U.S.C. § 1692e(10) of the FDCPA, which prohibits the use of "any false representation or deceptive means to collect or attempt to collect any debt." (Dkt. 27 Count II). Puncochar claims that the dunning letter, which was on RMIC letterhead, falsely represented that RMIC was collecting, or could collect, the Kurtz debt

---

[3] Ordinarily, this Court addresses counts in chronological order. The arguments the parties make and the relief this Court grants, however, require a slightly different organizational approach. This Court first address the RMIC Defendants' factual arguments as to Counts I-III, then the parties' other arguments as to Counts II-IV, and finally, the parties' arguments as to Count I.

because RMIC "closed its doors in 2014." (Dkt. 64-1 at 4). As evidence of the purported falsity, Puncochar points to one of RMIC's interrogatory responses which provides that "[McLaughlin] actively participated in active discussions with staff until his retirement and closing of the [RMIC] office in 2014." (Dkt. 65-1 at PDF pp. 12-13 (response to interrogatory no. 6)). Puncochar also points to McLaughlin's deposition testimony. McLaughlin testified that RMIC was "barely" operating, that it was "winding down" between January and February of 2015, (Dkt 65-1 at PDF p. 20 (dep 6:1-14)), and that the office was closed in 2014. (Dkt 65-1 at PDF p. 22-23 (dep 26:17-27:11)). Counsel for Puncochar, however, asked McLaughlin if RMIC was still operating at the time of the deposition, and the answer was "yes." (Dkt. 65-1 at PDF p. 23 (dep 27:1-3)). McLaughlin, in turn, provided sworn affidavits and other documentation which clarified some of his deposition testimony.

Over Puncochar's objection that the affidavits are self-serving, this Court finds that the affidavits McLaughlin provided clarify, not conflict, with his deposition testimony. *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cit. 1999) (citations omitted) (A witness may clarify or expand on deposition testimony by way of affidavit if the deposition testimony is ambiguous or incomplete). McLaughlin's deposition testimony and interrogatory responses do not affirmatively establish that RMIC had ceased all business operations at the time the dunning letter was sent; the affidavits and documentation provided by the RMIC Defendants clarify that RMIC was still operating, albeit on a much smaller scale. (Dkt. 70-1 at Exhibit 1 ¶¶ 4-11, 18; Dkt. 70-2 at Exhibit 1 ¶¶ 5, 6; Dkt. 70-1 at PDF p. 6). This Court finds that the RMIC Defendants did not make any false representations about who could collect the Kurtz debt because RMIC was still operating when the dunning letter was sent. This Court grants summary judgment as to Count II in favor of the RMIC Defendants.

Puncochar also claims that the RMIC Defendants violated 15 U.S.C. § 1692f, which provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect

any debt." Specifically, Count III of the complaint alleges that the RMIC Defendants violated section 1692f(1) which prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," by sending the dunning letter. The Seventh Circuit, however, has made it clear "[t]hat a letter simply providing the information required by [15 U.S.C.] § 1692g(a) is not an unfair or unconscionable means of debt collection under § 1692f, even when the debt collector may have violated some other provision of the FDCPA." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 998 (7th Cir. 2003).[4] Puncochar relies on *Johnson v. J.V.D.B. & Assocs., Inc.*, No. 12 C 7223, 2014 U.S. Dist. LEXIS 135898 (N.D. Ill. Sept. 26, 2014) (Lee, J.), for the proposition that *Turner* is inapplicable. In *Johnson*, the court found that a single dunning letter constituted a violation of 15 U.S.C. § 1692e(2). This Court, however, relies on *Turner* as it relates to 15 U.S.C. § 1692f, a section of the FDCPA that the *Johnson* court does not address. Here, the dunning letter simply explained that the Kurtz debt had been placed with RMIC for collection and informed Puncochar of an opportunity to dispute the debt. The RMIC Defendants did not engage in any other collection activity which would constitute an unconscionable or unfair means of collection. Summary judgment as to Count III is granted in favor of the RMIC Defendants.

Puncochar claims that the RMIC Defendants violated 15 U.S.C. § 1692c(a)(2), which prohibits debt collectors from communicating with debtors who are represented by counsel with respect to such debt. (Dkt. 27 Count IV). Puncochar argues that the FDCPA is a strict liability statute, therefore the RMIC Defendants' knowledge of whether Puncochar was represented by counsel is irrelevant. She is incorrect. *See*, *e.g. Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (liability under 1692c(a)(2) is dependent on the debt collector's knowledge). It is undisputed that the RMIC Defendants did not learn of the bankruptcy proceedings and that Puncochar was

---

[4] 15 U.S.C. § 1692g(a) notices shall contain the amount of the debt, the name of the creditor, and a statement about the debtor's ability to dispute the debt, among other things.

represented by counsel until after they sent the dunning letter. It is also undisputed that the RMIC Defendants ceased collection activities after learning of Puncochar's representation. The record shows that the RMIC Defendants did not violate section 1692c(a)(2) since they did not engage in collection activities after discovering that Puncochar was represented. Accordingly, this Court grants summary judgment as to Count IV in favor of the RMIC Defendants.

Finally, Count I of the complaint alleges a violation of 15 U.S.C. § 1692e(2), which prohibits false representations of "the character amount, or legal status of any debt." "[D]emand for immediate payment while a debtor is in bankruptcy . . . is 'false' in the sense that it asserts that money is due, although because of the automatic stay . . . it is not." *Randolph,* 368 F.3d at 728. The RMIC Defendants technically violated section 1692e(2) when they sent the dunning letter since the Kurtz debt was protected by the bankruptcy stay. The RMIC Defendants contend that this violation of the FDCPA was the result of a bona fide error and excusable.

To be excused for a violation of the FDCPA, a party must show that the violation was unintentional, that it resulted from a bona fide error, and that he maintained procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Services*, 394 F.3d 530, 537 (7th Cir. 2005). A "debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort*, 394 F.3d at 537. The record demonstrates that the RMIC Defendants' violation of section 1692e(2) could not have been intentional since the RMIC Defendants were not aware of the bankruptcy proceedings at the time they sent the dunning letter. Puncochar has failed to point to anything in the record that suggests the violation of the FDCPA was intentional. *Jenkins v. Heintz,* 124 F.3d 824, 831 (7th Cir. 1997) (If a defendant shows that the violation was unintentional, the plaintiff must show that the defendant acted intentionally).

A bona fide error is a genuine mistake, not a contrived one. *Kort*, 394 F.3d at 538. The evidence shows that the RMIC Defendants' mistake was indeed genuine. There is no evidence showing that the RMIC Defendants employed any abusive tactics in its single attempt to collect or that they attempted to deceive or trick Puncochar into paying the Kurtz debt. Further, the RMIC Defendants ceased collection activities upon discovering the bankruptcy. Puncochar has produced no evidence that this presumed violation was a contrived mistake.

Finally, this Court turns to whether the RMIC Defendants employed or implemented procedures that were reasonably adapted to avoid this violation. Section 1692k(c) does not require the RMIC Defendants to take every conceivable precaution to avoid errors, just reasonable precautions. *Kort*, 394 F. 3d at 539; *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). Notably, the Seventh Circuit does not require the RMIC Defendants to independently verify the validity of every debt to qualify for the bona fide error defense. *Hyman*, 362 F.3d at 968 (citations omitted). In *Hyman*, the district court, after a bench trial, found that the defendant relied on reasonable procedures to avoid mailing collection letters to accounts in bankruptcy and excused the defendant from liability for a violation of section 1692e as was a bona fide error, which the Seventh Circuit affirmed. *Id.* at 966-69.

The record shows that the RMIC Defendants have both similar and more extensive procedures in place than the defendant in *Hyman*. The RMIC Defendants rely on the formal RMK/RMIC Agreement which presumes that RMK Holdings would not assign RMIC a debt included in a bankruptcy, and the RMIC Defendants terminate all collection proceedings after receiving any bankruptcy notices. *Hyman*, 362 F.3d at 968; *see also Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497 (7th Cir. 2007).[5] In addition, the RMIC Defendants provide debtors with

---

[5] Puncochar argues that the agreements in *Hyman* and *Ross* were between the original creditor and the debt collector, and that because there is a degree of separation between Kurtz and the RMIC Defendants, the RMK/RMIC Agreement should hold no weight. Puncochar, however, provides no authority for this proposition.

an opportunity to dispute debts, and they take additional precautions using TLO, Pacer, and BAE Systems Bankruptcy Notifications prior to filing any action against a debtor. No reasonable jury could find that the RMIC Defendants' violation of section 1692e(2) was anything but a bona fide error. Accordingly, the RMIC Defendants' violation of section 1692e(2) is excused and summary judgment as to Count I is granted in favor of the RMIC Defendants.

*2. Motion for sanctions*

The RMIC Defendants move for sanctions against Puncochar's counsel for violations of Rule 11(b). The RMIC Defendants claim that Puncochar violated Rule 11(b)(3) by "falsely alleging" that the Kurtz debt was included in the bankruptcy, that RMIC closed its doors, that McLaughlin was retired, and that Puncochar was represented by counsel as to the Kurtz debt. The Kurtz debt was "included" in the bankruptcy by way of the automatic stay, Puncochar's contentions about RMIC's status were based on ambiguous deposition testimony, and Puncochar's position on the RMIC Defendants communicating with her while she was represented by an attorney in the bankruptcy proceedings was based on a misinterpretation of the law.

The RMIC Defendants next claim that Puncochar violated Rules 11(b)(1) and 11(b)(2) because she added Patterson and RMK Holdings as defendants for the purpose of harassment and because the claims against them are frivolous. Puncochar argues that RMK Holdings and Patterson were added in response to McLaughlin's deposition testimony and not meant to harass, therefore it appears as if they were added for a proper purpose. The claims against RMK Holdings and Patterson, while poorly pleaded, are not necessarily frivolous. This Court has dismissed the claims against RMK Holdings and Patterson in a separate order, but there may be grounds on which RMK Holdings and Patterson could be liable for violations of the FDCPA.

In her response, Puncochar asks this Court to impose sanctions on the RMIC Defendants for filing the motion for sanctions. Counsel for Puncochar directed the RMIC Defendants to the

9

arguments made in Puncochar's motion for summary judgment and asked them to withdraw their motion for sanctions. The RMIC Defendants had a different interpretation of the legal and factual bases for the Puncochar's claims, as demonstrated by their own motion for summary judgment, therefore this Court finds that the motion for sanctions was not filed in bad faith.

Although this case is contentious, this Court finds that the parties have not engaged in any bad faith litigation. Accordingly, the RMIC Defendants' motion for sanctions is denied.

**Conclusion**

For the foregoing reasons, Puncochar's motion for summary judgment [64] is denied, the RMIC Defendants' motion for summary judgment [49] is granted, and the RMIC Defendants' motion for sanctions [51] is denied.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: March 31, 2017