# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Christine Puncochar, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. 15-cv-07089 |
| Revenue Management of Illinois Corp., Ronald R. McLaughlin, RMK Holdings, Inc., and Sue Patterson, | )   Judge Sharon Johnson Coleman ) ) ) ) |
|     Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Christine Puncochar ("Puncochar") filed her four count second amended complaint (Dkt. 27) against Revenue Management of Illinois Corp. ("RMIC"), Ronald R. McLaughlin ("McLaughlin), RMK Holdings, Inc. ("RMK Holdings"), and Sue Patterson ("Patterson") alleging violations of the Fair Debt Collection Practice Act ("FDCPA") at 15 U.S.C. § 1692, *et seq.* RMK Holdings and Patterson (collectively, "RMK Defendants") move to dismiss all counts of Puncochar's complaint. For the following reasons, RMK's motion to dismiss [58] is granted.

**Background**

The following facts are taken from Puncochar's complaint and accepted as true for the purpose of ruling on the instant motion.[1]

Puncochar incurred a debt which is the subject of this suit. (Dkt. 27 ¶ 4). On or around January 27, 2015, Puncochar filed a voluntary bankruptcy petition that allegedly "included" the debt.

---

[1] This Court notes that Puncochar and defendants RMIC and McLaughlin filed cross-motions for summary judgment. Those motions are resolved in a separate order. For the purposes of ruling on the instant motion, this Court relies only on the allegations in the complaint and the arguments made in Puncochar and the RMIC Defendants' briefs. This Court does not import any of the facts or arguments made in the cross-motions for summary judgment.

(*Id.* ¶ 17). The complaint does not describe what the debt is or to whom it is owed.[2] RMK Holdings, a company owned and operated by Patterson, acquired the debt sometime after January 27, 2015. (*Id.* ¶¶ 10, 18). Puncochar does not allege the specific date that the RMK Defendants acquired the debt. RMK then referred the debt to RMIC, a company owned and operated by McLaughlin, for collection. (*Id.* ¶¶ 7, 19). On or around April 24, 2015, RMIC sent a letter to Puncochar to collect the debt. (*Id.* ¶ 20).

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, not the merits of the allegations. To overcome a motion to dismiss, a complaint must include sufficient factual allegations which, taken as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). This does not mean that a complaint must include "detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Further, while a court is required to accept as true allegations within a complaint for purposes of a 12(b)(6) motion to dismiss, this requirement is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While legal conclusions can form the framework of a complaint, "they must be supported by factual allegations." *Id.* at 679

**Discussion**

The RMK Defendants argue that Puncochar failed to allege that they are debt collectors or that they engaged in any debt collection activity, therefore they are not subject to the FDCPA.

---

[2] The parties' motion to dismiss briefs acknowledge that the debt is a debt owed to Kurtz Ambulance Services.

Puncochar contends that the allegations support inferences that the RMK Defendants were indirectly engaged in debt collection activity because she filed for bankruptcy before RMIC attempted to collect the debt.

A party must be a debt collector to be subject to the FDCPA. *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). Under the FDCPA a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Creditors are not considered debt collectors under the Act and are therefore not subject to its provisions. § 1692a(6)(F)(iii); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). A party is considered a creditor if the debt she seeks to collect was not in default at the time she purchased or otherwise obtained it. § 1692a(6)(F)(iii); *Schlosser*, 323 F.3d at 536.

Puncochar's allegations that the RMK Defendants are debt collectors are nothing but conclusory. Puncochar lumps all of the defendants together without describing their relationship and then asserts that all of the defendants are debt collectors, without explanation, by essentially reciting the statutory definition. (Dkt. 27 ¶¶ 13-15). While conclusory allegations can provide the framework for a complaint, those allegations must be supported with facts. *Iqbal*, 556 U.S. at 679. Puncochar offers nothing more than conclusory allegations; accordingly, this Court finds that Puncochar failed to plead that the RMK Defendants meet the statutory definition of a debt collector.

Puncochar also does not allege that the debt was in default when the RMK Defendants acquired it, further supporting the conclusion that she failed to plead that the RMK Defendants are debt collectors. Puncochar argues that the debt was in default because of the bankruptcy stay. 11 U.S.C. § 362. The automatic stay simply prevents creditors and debt collectors from attempting to

3

collect a debt after an individual files for bankruptcy. § 362(a)(1) (declaring that the stay prevents "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case . . . ."). The stay provision says nothing about whether a debt is in default. Puncochar also argues that five months without payment on the debt implies that it was in default. While the FDCPA does not define "default," courts typically recognize a distinction between a delinquent debt and a debt in default. *McKinney v. Cadleway Props.*, 548 F.3d 496, 502 n.2 (7th Cir. 2008) (citing *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003)). If not provided by statute, parties are allowed to define when a debt goes into default in the terms of the debt instrument or transaction. *McKinney*, 548 F.3d at 502 n.2 (following the holding in *Alibrandi* that the default terms of the debt transaction control when a debt goes into default). If not defined by either the debt instrument or statute, a debt does not go into default until well after the debt has been outstanding. *Alibrandi*, 333 F.3d at 87; *see also McKinney*, 548 F.3d at 502 n.2. In the complaint, Puncochar does not allege when the debt was due, and she does not provide any details about the debt instrument. Simply stating that Puncochar's debt was in default because she filed for bankruptcy and because five months elapsed between the date when the debt was incurred and when collection efforts began is nothing more than conclusory. This Court finds that Puncochar failed to plead that the debt was in default when Puncochar acquired it.

Even if Puncochar sufficiently alleged that the RMK Defendants were debt collectors or that the debt was in default when they acquired it, Puncochar only alleges that they indirectly attempted to collect the debt. Indirect liability under the FDCPA arises when "a company meeting the definition of a 'debt collector' under the FDCPA [is] held vicariously liable for the actions of a second company acting on its behalf." *Schutz v. Arrow Fin. Servs.*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006) (Castillo, J.) (citing *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 405 (3d Cir. 2000)). A

4

"principal-agent relationship exists when [a principal] manifests assent to [an agent] that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id.* at 877 (internal quotations omitted) (quoting Restatement (Third) of Agency § 1.01 (2006)). Here, Puncochar does not allege that the RMK Defendants asserted control over RMIC interactions with debtors nor does she allege that RMIC assented to being subject to the RMK Defendants' control. Puncochar also does not allege that the RMK Defendants maintained any right to control RMIC's operations. The allegation that RMK Holdings referred Puncochar's debt to RMIC and that RMIC sent a collection letter does not rise to the level of a principal-agent relationship. Accordingly, Puncochar has not pleaded that the RMK Defendants are liable, directly or indirectly, for any alleged violation of the FDCPA.

Since this Court finds that Puncochar has not stated a plausible claim for relief as to RMK Holdings and Patterson, this Court will not address Puncochar's veil piercing argument related to Patterson.

**Conclusion**

For the foregoing reasons, the RMK Defendants' motion to dismiss [58] is granted without prejudice. Puncochar is granted leave to file an amended complaint consistent with this order, within 30 days, taking into account this Court's ruling on the cross-motions for summary judgment [49], [64].

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: March 31, 2017